United States v. Pugh is our next case for argument. Ms. Dudek. Good morning. May it please the Court, Renee Dudek for Appellant Deon Pugh. The central issue in this appeal is whether the District Court erred in determining for sentencing purposes that Mr. Pugh was a co-leader and joint venturer with Jonathan Mason, who was the leader of the Mason Drug Trafficking Organization. And this determination led the District Court to conclude that Mr. Pugh should receive a four-level leader and organizer sentencing enhancement and be responsible for sentencing purposes for the organization's sale of 1,000 grams or more of heroin. And these determinations were all reversible error for three primary reasons. The first reason is that Mr. Pugh lacked the type of relative authority, relative culpability, and ongoing control over participants in the drug trafficking organization that is necessary under this Court's precedent to constitute that four-level leadership enhancement. The second reason is that Mr. Pugh was just not a joint venturer with Mr. Mason, not in the way that it was determined for sentencing, such that all of Mr. Mason's heroin trafficking should be imputed onto Mr. Pugh. The third reason is that the government has not shown that these errors were harmless, which it has the burden to do. And it cannot. In fact, the record indicates the opposite. The District Court noted that several of the factors that it considered in fashioning a sentence for Mr. Pugh were just on the line or just over the line, so to speak. His criminal history, as the District Court noted, really could be considered as overstating his past conduct. He had two prior offenses that were both in Kuwait. They were committed when he was 17. He was tried as an adult, and there was an intervening arrest. They were counted separately. They were close enough to the look-back period that if they had been slightly farther back, they would not have been counted. There were all of these factors that were very close to him having lower guideline inputs, and the District Court took seriously all of those things, which really strengthened the appearance on the record that if it had gotten—but for the errors on the joint venture finding as well as the leadership enhancement, it might have chosen a different sentence for Mr. Pugh. And I'd like to spend some time now talking about the type of relative authority and ongoing control that Mr. Pugh just didn't have as to why the leadership enhancement was incorrect. Actually, can we skip to drug weight, and then you can go back if we have time. Drug weight. I want to talk about drug weight. We can go back to the leadership enhancement. You know, I'm looking at this record, and Pugh submitted a supplemental sentencing memorandum. This is docket 1052-1, and he says to the sentencing judge, the court found, talking about Judge Lee in the trial, that in a series of transactions, the conspiracy Mr. Pugh transacted approximately 2,236 grands of heroin. This is the amount Mr. Pugh should be held accountable for transacting, and he later says this honorable court should not deviate from Judge Lee's findings that Pugh trafficked in 2,236 grams of heroin. That's Pugh talking to the court directly. That's his own supplemental sentence. But then Pugh's attorney comes along, and in his objections to the PSR and sentencing memo, he says—this is Pugh's attorney now—based on Judge Lee's findings, beyond a reasonable doubt, Pugh's sentencing guideline level is 30. So isn't this waiver Pugh asked the sentencing court to make his base offense level 30, based on a little over 2,000 grams of heroin? I don't think so, Your Honor, and partly it's because all of the objections that we're making now to drug weight were made during trial, and the post-trial motions were made again at sentencing. I know there was some—there was some citing of the record and some presentation that was a little bit in tension because Mr. Pugh authored some of his own filings, and he went through two sets of attorneys at the trial level. So I know that there's some inconsistency there, but all of these specific challenges were made, so there is no issue of waiver here. No, the point that we're trying to drill down here, the base offense level that he accepted was 30. Not just accepted, he told the court the base offense level should be 30. And that's not just Mr. Pugh, it's his attorney at sentencing, not at trial. I think, if I understand Your Honor's question correctly, that was when the court was trying to understand whether or not the inchoate offenses should be counted, and that was the main focus of that. And at that time, the two numbers that were in front of the district court, as I understand it, were 30 and 34. Ultimately, I'm not actually sure if that would have changed the guideline calculation because of the career criminal offender issue, but . . . If Mr. Pugh was accepting a base offense level of 30, his counsel was also advising the court that our base offense level is 30. Counsel and Mr. Pugh had to also accept that the way they got to 30 was at least 1,000 grams of heroin. My reading of the record was that that was not the position of the attorney at the time. I understand that they argued that 30 was more appropriate than 34, but I may just be reading it . . . No, this paragraph is about drug weight. It's not about inchoate offenses. This is document 1006. It's Pugh's objections to the pre-sentence report and it's Pugh's sentencing memorandum combo document. The paragraph's about drug weight. I mean, I take Your Honor's point. If Pugh did affirmatively request that 30 be the offense level, then I would see why that could be construed that way. I still don't think that's dispositive of the appeal, however, because what the district court was required to do was consider all of the underlying facts against all of the factors on sentencing and the drug weight . . . So, the argument that the amount of heroin . . . wasn't that argument then waived? That I had less than that? Yes, Your Honor. We don't think it was waived, but even if it was waived, that doesn't obviate the appeal because there's still the issue of the leadership enhancement. The guideline . . . We weren't saying the appeal, just that issue. Oh, yes, Your Honor. Okay. We don't think it was waived, but even setting that issue aside, the most glaring error is really the leadership enhancement. And because the guideline range is only advisory now, anything that would inform the district court's analysis leading up to the sentence is relevant to the sentence that it shows here. And unless, Your Honor, there's more questions about the drug weight, I would like to talk about the leadership enhancement. The central inquiry of the leadership enhancement is relative responsibility. And it is undisputed that Mr. Pugh did not sit on top of the Mason Drug Trafficking Organization. That was Jonathan Mason. In fact, Mr. Pugh was defendant number four. Above him were Mr. Mason, obviously, and then there was Mr. Twyman, Mr. Mooney, and Mr. Johnson. And the . . . there's only one instance of Mr. Pugh giving any sort of order or directive in the record, and that was one that did not come with any threat of sanction under this court's precedent. That is not sufficient for there to be a leadership enhancement. Similarly, we have other defendants who are undisputedly sitting higher in the hierarchy who are doing the same types of tasks that the district court would have looked at to connect to those sentencing factors. We have Mr. Twyman who's collecting money, Mr. Mooney who's collecting money and explicitly not sharing it with Mr. Pugh, but instead sharing it with Mr. Mason. And perhaps even more important than that, we have the district court only giving two bases for why it is applying the leadership enhancement. The first one is the joint venture issue, which is obviated by the factors I just discussed. And one exhibit, which is Government Exhibit 206, and the district court at sentencing relied on the district court at trial in terms of the characterization of that exhibit, which was based on an inaccurate description by the government at trial that that exhibit contained repeated references to the words we and our, when Mr. Pugh and Mr. Mason were discussing the Mason Drug Organization, that's just not shown in the transcript of that call. The word our does not appear there at all, and yet that was half of the district court's basis for applying that four-level leadership enhancement, which is especially concerning given that the district court did not discuss whether a three-level enhancement would be appropriate, much less not at all. I see my time is up, Your Honors. Thank you, Counsel. Mr. Leva. May it please the Court, Edward Leva for the United States. The district court did not err in calculating the guidelines range here. There's three issues that the defendant raises on appeal, the career offender guidelines, the drug quantity, and a leader organizer enhancement. The defendant concedes that the career offender finding was correct under Seventh Circuit case law, and that decision dictates the guidelines range of 360 months to life here. As Your Honors have noted, the defendant waived the argument challenging the drug quantity, and so that leaves the leader organizer finding. The district court did not err in making that finding because the evidence amply supported the district court's finding. Let's start where Ms. Judek ended. Did the district court kind of go overboard on this we are thing? Mr. Pugh, in his briefs, lays out what the exact evidence is about how many times we or are was used. Did the government kind of exaggerate the use of that term, and the district court adopt that? Judge, the government disagrees that the use of we or are was limited to one case. I know that's how the defendant argued it in the brief. There are multiple calls where Mason and Pugh are talking in terms of we and are. The district court cited one particular case at the end of trial, but there were multiple examples which the government has laid out in its response brief. What these calls show between Mason and Pugh is that they are working together in this joint venture relationship in which they do all the things you would expect from two people at the top of a sales organization. They are talking about the product that they are selling, the drugs, which they refer to as our move. That's Government Exhibit 214. They are talking about locking in customers, Government Exhibit 203. They are talking about customer complaints. There's one instance where a customer says the drugs are too hard. That's Government Exhibit 218. There's another example where a customer is complaining about the potency of the drug that it's not very strong. In response to those complaints, Pugh and Mason together decide how they are going to change it. They change the mixing strategies that they are using, and Mason says we're going to switch to what Pugh proposes. That's Government Exhibit 218. They talk about the pace of the sales, the availability of sellers, and sales strategies and pricing strategies, including the use of double ups, which is a two-for-one in order to increase sales. That's Government Exhibit 215. And then when they are talking about acquiring a book of narcotics, which the drug trafficking experts said would be a kilogram of narcotics, Mason says we're a perfect match. That's Government Exhibit 219. So he's talking about the two of us together in our joint sales drug trafficking activities are working very well together. And so I don't think there was an exaggeration when the court relied on these calls. In addition to making these decisions with Mason and working on planning and organizing, the defendant also is exercising authority over the sellers who work beneath him in the organization. That's Wiltz, Pearson, Williams, and White. We know from the testimony of Wiltz that the defendant was directing him on where to make distributions of drugs, and Wiltz would then return the money back to Mr. Pugh. In Government Exhibit 213, a conversation with Pearson, Mr. Pugh is talking about the amount of bags that are sold, and Pearson expresses his devotion to the defendant when he says, I don't punch a clock, I don't work a normal 9-to-5 job, I punch the block. I work out on the block, on the street, selling drugs for the defendant. The defendant also talks about resupplying various sellers with drugs and collecting money from them, including Pearson, Williams, and White. That's Government Exhibits 210, 232. Do you want to hone in on your best evidence that he was a leader organizer more so than a trusted manager or supervisor? Because everything you've listed so far also shows him to be a trusted manager and supervisor. I think the best evidence showing that he's a leader organizer, warranting the plus four, is that he's at the same level. He's making these decisions with Mason. It's not Mason saying, here, go ahead and do this, manage the people below us. It's the two of them making these decisions together. 3B1.1 talks about decision-making authority, nature of participation in the offense, degree of planning, organizing, nature and scope of the activity. All of these things he's doing at a high level. When he's not talking to Mason about the drugs or supervising, I'm sorry, leading or organizing the people under him, he's acquiring large volumes of drugs, bringing them to Mason's house, which is the center of the conspiracy. He's sitting at the marble table in Mason's house where he's packaging, mixing, and getting the drugs ready for distribution. And then he's also selling the drugs on his own, including the 186 grams of cocaine that he sold to Rutledge from the vestibule of Mason's house. So all of this shows that he's at the top of the organization along with Mason. It was not clearly erroneous for Judge Wood to make that finding. Even if this court does think that a manager-supervisor enhancement would have been more appropriate, any error here would be harmless because the ultimate guidelines calculation is dictated entirely by the career offender finding. The defendant's position is that he should be starting at a 28 based on the drug quantity, no leader organizer, no manager-supervisor enhancement. Even if you start at a 28, because he's a career offender and because the offense of conviction carries a maximum sentence of life imprisonment, the offense level jumps to 37. And because he's a career offender, the criminal history is 6. That's the offense level and the criminal history category that the sentencing judge used that leads to the 360 to life guidelines range here. So to the extent that this court thinks that there was any error with the leader organizer, any error would be harmless because there's no impact on the ultimate guidelines calculation. And that's the Riney case that we cited in the brief where there was an error on an obstruction enhancement that the sentencing judge applied, but ultimately the defendant was a career offender and the career offender guidelines are what governed in that case. As I mentioned in my opening statements, the defendant has conceded that the career offender status applies. He's just preserving that argument because of the circuit split. And as your honors have noted, the defendant waived the challenge to the drug quantity by advocating for a base offense level of 30 in his sentencing papers. There was a challenge to drug quantity at the sentencing hearing, but that related to additional quantities, including a fentanyl deal with Twyman and an additional extrapolated quantities that the government advocated for. But ultimately the defendant argued for 30, and so any challenge to that guidelines calculation is waived, even if it wasn't waived, it's a finding that was amply supported by the on a higher standard by the trial judge beyond a reasonable doubt. If there are no further questions from your honors, the government asks that the court affirm the sentence of the district court. Thank you very much, counsel. Thank you. Ms. Dudek, the court appreciates your willingness and that of your law firm to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.